Appellant. Mr. Smith for the Appellant, Mr. McGovern for the Appellant. Good morning. Good morning. May it please the Court, my name is Greg Smith. I'm appointed counsel for Gerald Smith. And we're here because the district court erred in denying in part Mr. Smith's 2255 petition and all of his Fair Sentencing Act motion. On his 2255 petition, Mr. Smith was given leave by this Court to file Johnson challenges to his 924C sentences or convictions, excuse me, because 924C's residual clause had been strict in raising questions if the predicate offenses still were crimes of violence. The 2255 was granted, striking his 924C that was based on kidnapping, but the 924 based on CCM was upheld. We appealed, and now the government for the first time says this Court need not even address these issues on the merits. You know, I often tell my kids, when you're facing huge, even seemingly overwhelming tasks, sometimes you've just got to chip away one piece at a time. And that's Mr. Smith's task here. He must do that, or else he will die in prison for acts he committed at age 17 to 21, over 30 years ago. The system already has plenty of procedural bars in place already. He's overcome all of them just to get here. He had to convince this Court before he could file successive habeas. The government didn't raise the concurrence in sentencing doctrine then. It was then filed in district court and sat there for years. Again, the government didn't raise it then. The CCE murder issue was then extensively briefed in the district court. The government didn't raise it then either. In fact, the government told the Court on the kidnapping count, where the kidnapping predicate was in play. That is inconsistent with its argument here. We then finally, timely filed an appeal to this Court on the rest, the CCM murder predicate, and the government filed no motion to dismiss. I had to — I then extensively briefed it here, and only when the risk became apparent that they might lose on the merits did the government belatedly raise this issue of concurrence in sentencing doctrine. Well, the concurrent sentencing doctrine doesn't fit here anyway. This isn't a challenge to a sentence, but to a conviction. This also isn't a concurrent sentence. The government briefed references, concurrent life sentences, but they are not concurrent life sentences. The 924Cs are consecutive to those life sentences. So it's not a sentencing issue. These are not concurrent sentences, but the government is arguing that — That amounts to the same thing, doesn't it? I'm sorry? That amounts to the same thing. A consecutive life sentence and a concurrent life sentence are equal, aren't they? How can you have two lives? You have the 924C, which is consecutive, specifically by statute consecutive to any other sentence. So it is expressly made consecutive of the life sentences. Yeah. It doesn't answer my question, but go on. I'm not arguing that the life sentences are consecutive to each other, Judge Randolph. I'm arguing that the 924C, the one that's an issue here, is consecutive. That's the one that we're trying to — But you're also arguing, I take it, that the government waived the concurrent sentence doctrine?  Right. Are you familiar with our case, United States v. Price, 938 Fed Second 1343? I don't know it off the top of my head, Your Honor. It's a case in which the government, not only in the district court, but also in the court of appeals, failed to raise the harmless error doctrine and concurrent sentences an offshoot of that. And we held that we have the authority and did to decide that issue sui sponte. It seems to me your argument contradicts United States v. Price. Well, Your Honor, that's not a case that was raised by the government and in opposition — If they don't raise the case, have they waived that, too? No, Your Honor. I would not — There's a Supreme Court decision saying no. No. I would not argue that. All right. Well, let's — Part of the point of the concurrent sentence doctrine is to save courts time — I understand. — addressing issues. But, of course, no time was saved, the district court, because it wasn't raised before the district court. Right. This could have — It's been fully briefed here. So there's — even if it were preserved — Yes. Is there any function to the concurrent sentence doctrine in this Court, which this Court has not yet adopted? Yes, Your Honor. I would argue that — It's not saving any time, right? It's not saving time. We went all the way through the district court, and now — Not saving resources. It's increased resources. In fact, now we're spending more time briefing — Exactly. — and arguing about an issue that was not raised below. We're not only dealing with the 924C. Right. We're also dealing with the consentencing — concurrent sentencing doctrine and what it's — how far it extends. Did you want to talk about the CCE murder conviction or the First Step Act issues? I will. Let me first, though, say just that please look at — I'm sure you have at least a little bit of evidence in this dissent where she cogently explained that due process shows that conviction of a non-crime is always prejudicial error as a matter of law, and it's always, by definition, harmful. Turning to the 924C charge itself, these 924C charges must necessarily rise or fall based on whether CCM is categorically a crime of violence. It fails to meet that because the elements and force clause has not been satisfied. It lacks the necessary mens re because it requires intentionally kills, comma, or counsels or causes a killing. Can I ask you a question about that? Sure. It seems to me that the CCE murder elements are that there has to be intentionally kills or counsels, commands, induces, procures, or causes the intentional killing and such killing results. It seems like an element of this, any way you slice it, is an intentional killing. An intentional meets the mens rea requirement. And it seems that you're arguing that this mens rea must be attributed to the defendant. But in the actus reus context, the actus reus doesn't have to be attributable to the defendant. Why does it have to be attributable to the defendant on mens rea? I would agree that intentionally meets the definition, but intentionally modifies kills, intentionally kills. No, but in the second thing, there still has to be an intentional killing that results. Merely has to cause. I think you're focusing on what the defendant has done. I'm saying that this offense requires an intentional killing under either clause. This intentional killing might be committed by somebody else with the requisite mens rea, but I'm saying why do we have to attribute the requisite mens rea to the defendant, as opposed to whoever commits the intentional killing that's listed in the offense? Because in the actus reus context, it doesn't have to be the defendant. It could be anybody. Yes. But the 924C is specific to the defendant. And the 924C recklessness is not enough. I'm asking a different question. No, I understand what you're saying, I think, which is what I'm trying to say is that an intentional killing by someone else doesn't qualify because the intent, the mens rea that applies to my client is the recklessness issue. And when you're looking at whether he can get hit with a huge mandatory consecutive term on top of that, 924C says you have to look at the mens rea elements. So could I ask you why that's different from the actus reus element? Because there's case law that says the actus reus can be attributed to a different person, the actual killing. Like, it doesn't have to be the defendant. So why does the mens rea have to be attributed to the defendant if the actus reus doesn't? Well, it's derivative mens rea that you're trying to attribute to my client. And I don't think, you know, in an aiding and abetting context, the aiding and abetting has to meet a certain threshold. They don't use the aiding and abetting language here. And so the recklessness is the only mens rea. I mean, mens rea is whether someone has committed wrong. Someone has intentionally committed a crime. It's the essence of a crime. Well, the actus reus is also an important part of the crime. So can you just explain why I should treat mens rea differently from actus reus in terms of its seriousness or why it could be attributed to other people but the other cannot? Well, I think because in the context of conspiracies, you, for example, acts done by others can be attributed to you, but you have to look at the person's individualized intent. Did they intentionally join the conspiracy? And we don't have that intentionality here. What we have is, I mean, merely recklessly causing an intentional killing or a killing where the killing results. The only mens rea, which is the essence when we're looking at individualized wrongdoing, the only mens rea that is being applied to my client, in an act, the acts can be attributed, but intent is never cross-attributed. In a conspiracy case, just because somebody else had the intention to join the conspiracy, that doesn't make them guilty because they have to intentionally join the conspiracy. You always look at mens rea differently in the sense that the defendant has to have individualized wrongdoing, an individualized mental purposeful or reckless, depending on the circumstances. But the essence of what makes it a wrong, what makes it a crime, is what's the mental state. That's why we have insanity laws. The mental state is different than the acts because we have to look specifically at the individualized mental state of someone, regardless of whether the acts might be attributed to. I understand I'm past time, but let me just briefly say in concluding as well, because I don't want to leave this, on the Fair Sentencing Act, we would argue it's an abuse of discretion for to leave in place a sentence that is above the statutory maximum. At a minimum, the district court needed to explain why, under the White case, why she was leaving in place a sentence that was not only severe, but higher than what society accepts it today as a possible sentence. The law is clear that the district court may adjust the sentence. It doesn't say must. I understand. So I'm trying to get, and given, you know, I've been told very broad discretion of the district court and light touch appellate review of these decisions, that's what the Supreme Court said, and so how do we get from that to they have to, have to adjust some sentences, at least under the circumstance where it's no longer a lawful sentence. Yes, Your Honor. I think the White case does say that despite the broad discretion, it's not unbridled discretion. Well, unbridled just means you can't abuse discretion, but you need to make an argument that is a matter of law. So as a matter of law, it's always an abuse of discretion. Is that your view, to not adjust a sentence where the law now prescribes a different, a lower sentence? Look, if she had given 40 years, I may disagree with that sentence, but, yes, I think when it's beyond what society the whole purpose of the Fair Sentencing Act was to normalize, to make consistent pre- and post-Fair Sentencing Act sentences, and for her to leave in place a sentence that society no longer accepts today as tolerable, I think at least in that limited circumstance, at a minimum, she had to do more than she did. What she said in part was it would be an advisory decision, which is simply wrong. It would not be an advisory decision to change the sentence on that count. And most importantly, this must be decided now. If this is not decided when she raised this under the Fair Sentencing Act, if it is not addressed, he will lose the ability to raise this forever. So even if in the future all his other sentences in the life sentence might be wrong. Is that true? Because she did rely heavily on what she called this being an advisory decision. And so that it's almost like it wasn't before her to decide, because federal courts don't do advisory opinions. And so if it's not going to change anything, the court's not going to do anything. The bar on raising a request for adjustment at a later time only applies if the original claim was fully heard on the merits. And if she, at least partially, did not decide it on the merits because of a sort of procedural barrier, in her view, the advisory opinion nature of it, then perhaps you didn't have it fully addressed on the merits and would be able to raise it again later. Well, the government is arguing here she did look at the merits. And I'm sure later on they will argue it. Well, you and the government are going to disagree lots of times. Right. So my question is, do you understand what the district court did here to be full consideration on the merits or not, given her concerns about issuing an advisory opinion? I think my client will face procedural bar challenges down the road. Not challenges, which people raise challenges that are wrong all the time. I'm asking you your opinion of whether what happened here, in your opinion, satisfies that statutory requirement of full consideration on the merits that would bar a later claim. Or are you arguing that it's a concern, but, in fact, you would have a good argument later that, in fact, there was no full consideration on the merits because of her concerns about even her decision to back off from issuing an advisory opinion? The short answer is I don't know. And even if I did know, my client would be faced with a procedural bar that he doesn't deserve. He raised this timely. The statute says it's supposed to be heard on the merits. And he shouldn't face a procedural bar later when he did not do — he doesn't deserve it. He raised it timely. And if it doesn't get decided, he's going to be faced with an additional procedural bar down the road that he doesn't deserve, as he tries to chip away at his sentence. So — Kagan. I'd like to go back for a moment to the issue of mens rea and the second part of the definition of a CCE murder. I understand your argument to rely on cause and that cause can be — that's one way of proving CCE murder, causing the killing, and that can be reckless or negligent, something short of intentional. And I'm wondering if viewing cause in the context in which it's raised in this definition, that cause could be viewed as somewhat ambiguous, because it's in a list of other words that are intentional, like counsel, command, induce, procure. And we have case law that says that, you know, this is the Morgan case, that says if there's a general scienter provision, the presumption applies with equal or greater force to the scope of that provision than others. And if cause is viewed as somewhat ambiguous in this context, under the nociter associis canon, we would want to view it like the other words in the list, which are all intentional. And I'm just wondering what your view is of how we should view cause if we think it's ambiguous in this context. Two things. One is we did discuss the Morgan case in the reply, but more specifically, if it is ambiguous, then under the rule of lenity, then my client needs to be given the benefit of the doubt. If it's ambiguous, then it should be resolved in his favor. And because if there is statutory ambiguity, he's not supposed to languish in prison based on ambiguity in a statute. That's what the rule of lenity is all about. And we did raise that, and the government didn't address the rule of lenity. Thank you very much. Good morning, Your Honors, and may it please the Court, Michael McGovern, on behalf of Appellee, the United States. This Court should affirm the district court's partial denial of Mr. Smith's 2255  It correctly found that CCE murder is a proper predicate for a 924C claim or conviction. Additionally, the district court did not abuse its discretion in addressing Mr. Smith's First Death Act motion when it found that he was convicted of covered crimes that would permit him, in its discretion, to give a sentence reduction, but then exercised its discretion not to provide the requested reduction. Turning first to CCE murder as a proper predicate, CCE murder is a proper predicate for a 924C claim for two reasons. It is both a crime of violence and it is a drug trafficking crime. And as such, it Mr. Smith was not entitled to vacation under 2255 of those convictions. On the crime of violence, though, how do you grapple with the word cause? If we don't think that intentionally modifies cause, cause can include reckless or negligent cause of death. Yes, Your Honor. So specifically with respect to cause, our first point is that the word intentionally, which comes before kill, is not limited to the verb kill. There's no reason to limit that adverb only to the verb kill, but would then extend to all of the verbs in the list, which I refer to as the aiding and abetting clause, which comes after the kills. And so in that way, intentionally would modify cause. Even if this Court were to question whether intentionally should be read to cause, we would turn to, as Your Honor cited, this Court's decision in Morgan, which says that where there is a missing scienter requirement, this Court will read one in. And if there is a scienter requirement that is explicitly stated in the statute, that should be applied to all of the elements that require a scienter requirement. And here, that scienter requirement would be intentionally. Your submission is that use of intentionally is necessarily use of force? An intentional — to intentionally cause an intentional killing would necessarily be a use of force against an individual, yes, Your Honor. Okay. What about poison? Yes, Your Honor. We believe that in the context of — That doesn't involve use of force necessarily at all. Well, Your Honor, the Supreme Court in Castleman grappled with that and indicated that use of force doesn't necessarily mean use of direct force, that the force doesn't have to be directly applied, and that poison, as under the common law understanding of what use of force means, even using poison to cause injury would be a use of force. And so under that understanding of force, that force can be indirect, in the same way, Castleman points to, when one pulls a trigger, pulling the trigger is not using force against someone, but shooting someone is a use — the force that is causing the injury may be the bullet, but the individual pulling a trigger is using that force against someone. Similarly, when someone sprinkles poison onto food, they are using the force against the individual. It's a bit far-fetched, isn't it? Well, I believe the Supreme Court specifically addressed it in Castleman, and so under that line of cases and the cases that have come out interpreting that in other circuits, it would not be far-fetched as a legal matter to say that the use of poison was a use of force against an individual where it caused death, as is required under the CCE statute. What if — I'm the right-hand person to the mob boss. The mob boss is extremely old and bedridden and in frail health, has to have medicine each day, or will die — dual heart issues or whatever — will die without that medicine. And one of the things I do is give the mob boss that medicine each day. And one day, intending that he die, I do not give him his medicine. And nature takes its course, and he dies exactly as I intended. I've intended the killing. Yes, Your Honor. An intentional killing has resulted. What force have I applied to his body? I let nature take its course. The — that's answered by the Sixth Circuit. This is a question of whether an omission can count as the use of force. And in Harrison, the Sixth Circuit said, yes, where there — where an omission causes injury and you intentionally omit the action in order to cause that injury, you are, in a legal sense — Examples that are usually given are where you have someone in a trapped situation. You know, you've got someone locked in a room, or it's a dependent child that you don't feed. I'm talking about another adult here who's not trapped, who's not locked in, who has other people coming and going. But everyone knows I'm the one that gives them the medicine, and no one assumes otherwise. I just — you have to show that categorically this statute requires the use of force to be applied directly or indirectly. What force have I applied to the body when I just let this natural bodily condition take its course? Well, again, I'll point to the Supreme Court precedent in Johnson, which was the subject of Scalia's concurrence in Castleman, specifically finds that — and this is a quote from page 173 of that concurrence, which is quoting from Johnson. Johnson is significant here because it concluded that, quote, the phrase physical force means violent force, that is, force capable of causing physical pain or injury to another person. And later on, he goes on to say, since — and this is a quote — that since it is impossible to cause bodily injury without using force capable of producing that result, any use — any causing of injury — I think I'm giving you an example where no force whatsoever is applied. But in the common — Unless you can point to me, what is the force that I have applied in my hypothetical? What force? The omission is considered by the law as a legal — But no force is required. Someone can sit in a room and just do nothing, not touch their body, not trap the person in the room. There are forces at play, Your Honor, and they're natural forces. As you indicated — Of course. Are you — is the government's position that if someone dies of natural causes, I sit here and intend that they die of natural causes? If an individual has the ability to prevent those natural causes from — Oh, unless you act as a good — so if I see somebody drowning, I walk by someone who is drowning, and I sit back, and I go, oh, that's that person I don't like. I intend that they die from drowning. And I just don't do anything. I don't jump in the water to save them. I have committed an intentional killing. You're turning tort law quite upside down. Well, if there is a legal obligation to act, yes. Okay, but my hypothetical had no legal obligation to act. I'm pretty sure the law at no point requires someone to give medicine to the mob boss. The — where an individual is omitting to act, and they intend — has no legal obligation to act, what then? Under the precedence of the sister circuits, they have looked at whether or not an omission — An omission which is of a — an omission which is of a type that causes substantial physical harm. They look at omissions by someone who has no legal obligation to act. Your Honor, I don't know that I can speak directly. So the government's position, though, is that an omission, even with no legal obligation to act, constitutes the application of force for purposes of the actus reus here? And that's — as a categorical approach to CCE murder, where one is intending their omission — I know that, yeah. Yes, Your Honor. But even if — That's really — wow. Okay. So we all have — if we see someone we really dislike and that we really would love to see die,  But even if — And I do nothing to get them out? But there was the addition of this individual is preventing medication from getting to this other individual. The manner in which — Excuse me. Anyone else — I haven't said — he hasn't locked the medicine up or thrown it away. Anyone else can give him medicine. Guy just has to ask. But nobody does. He doesn't ask because his assumption is this guy is going to give it to me. Again, where they are — their omission is becoming an affirmative act in that circumstance, an affirmative act that is causing harm that they intend to cause. And in that circumstance, they are, we believe, under the doctrines using physical force. But CCE murder is additionally a crime of violence, also qualifies as a drug trafficking crime, and therefore is a valid predicate. That was not argued below? That was not — the jury wasn't given any instructions on that? We can't possibly hold this up as a drug trafficking crime. We believe you can. The question of whether or not it's a drug trafficking crime — Have you forfeited? I'm sorry, Your Honor. We did not press this argument in the 2255 litigation. That is correct. But it's a question of law. Do you argue it to the jury in the trial? Were they given instructions on — to find whether this was in the course of a drug trafficking crime? They weren't asked to decide that it was a crime of violence. They were instructed that it was a crime of violence. So in the full context of what the jury instructions were given — Were they asked to find that this occurred during a drug trafficking crime? I'm sorry, Your Honor. Were they asked to find that this occurred during a drug trafficking crime? No, Your Honor. At the time, all of the parties agreed that it — that CCE murder was a crime of violence. And so that instruction — I'm just asking — But in the jury verdict form, it was very clear that the government's position was that CCE murder was a drug trafficking crime. So — I thought it was or. It was climate violence or a drug trafficking crime. That's how it was listed in the drug trafficking — in the jury verdict form. That is correct. So how is that clear? I'm sorry? So how is that clear, that that was the finding, they could have found the crime of violence? Oh, I apologize. I don't believe that the jury was ever asked to make a specific finding that it was a drug trafficking crime, nor were they asked to make a specific finding that it was, in fact, a crime of violence. They were instructed that it was a crime of violence. In its totality, the jury instructions instructed the jury that they were to find whether or not this individual committed CCE murder and were then instructed that CCE murder was a valid predicate for the 924C. So the factual questions that the jury was deciding was whether or not the CCE — the individual CCE murders were committed. And so in that way, there's no apprendee issue with respect to the drug trafficking conviction. And because it is a question of law drug trafficking, whether a crime is a drug trafficking crime, this Court is not prevented from affirming on that basis because its review of that would be de novo. And so although we didn't press it in the 2255 litigation, it doesn't prevent this Court from affirming on that basis. But turning back to the CCE murder, unless Your Honors have further questions, I would move on to the First Step Act, if there are any questions on that issue. Okay. Would you take a couple minutes? You're over your time here, but go ahead and take a couple minutes on First Step Act. I would be happy to answer questions. I think our position, as we indicated, is that the trial court did correctly determine that only two of the convictions were even-covered offenses that would permit resentencing under the First Step Act, and that after correctly making that legal determination, it then exercised its discretion as it was required to, but determined not to, and that that discretion should be deferred to here in this Court. How do you distinguish the Collington case from the Fourth Circuit, which said that whatever that discretion is, you can't leave in place a sentence that is in excess of what the law now allows? So I would first note that Collington was decided before Concepcion, before the Supreme Court sort of full-throatedly said there is no obligation, the statute does not require one, to reduce any sentence, even where there's a covered sentence. But I'd also note that the Fourth Circuit itself has recognized that Collington seems to be in tension with Concepcion. And so I would note that the Fourth Circuit has recognized that Collington seems to be in tension with Concepcion. There was a published opinion, and it's not cited in our brief where they stepped away and noted that Concepcion was decided after Collington, and I apologize that that is not cited in our brief, but the Fourth Circuit has recognized. So since Concepcion, in a published opinion, they've now? Correct, Your Honor. And I apologize for not having that citation for you at this moment. But we would argue that the Fourth Circuit's analysis falls apart under, after Concepcion there. Okay. Maybe you could send that citation in in a letter? Yes, Your Honor. Thank you. If there are no further questions, we would ask that the judgments be affirmed. Okay. Thank you very much. Okay. Mr. Smith will give you two minutes on rebuttal. Just very briefly. Getting criminal adjudications right is maybe the highest and most solemn obligation of any court. That's why the government said it's no problem to remand to fix the judgment and commitment order here, because it got two D.C. convictions wrong. They said you can go ahead and remand it to fix that, even though it won't affect the aggregate sentence, even though it won't affect the aggregate sentence, because it's the right thing to do, even when it has no effect on the aggregate overall sentence. Now you should also do the right thing on the rest and not leave these illegal convictions in place. The government agreed there that it was obvious we should send it back and fix it, because it's important to get it right. But what it's telling you here is it's not really required if it will require you to do the hard work of deciding a legal issue of first impression. You should always try, and you need to, your duty is to try to the court's high solemn duty is to get convictions right and to strike convictions when they are not crimes. Our argument here is these 924C convictions are not crimes, and therefore, this Court must take it up, even if you agree with the collateral sentence. But they aren't crimes? They are not crimes because it's not a valid predicate. Right. So it is a non-crime. But your First Step Act argument is that it's an illegal sentence, but not that there weren't crimes. The argument on the 924C is that 2255 is they are not crimes because it's not a valid predicate. And even if you were to find the concurrent sentencing doctrine appealing, this simply is not the case to do it. It was half of this motion was already decided. This is not the case for you to adopt the concurrent sentencing doctrine when half of the issue has already been taken up and we're simply looking at the other half to try to get the rest adjudicated here, just as it was adjudicated below. The important thing is to get to the right place and to not uphold illegal convictions, and these 924Cs are illegal convictions. Whether, you know, this is, you know, cases are tough a lot of times in the criminal setting. You have to, you know, you're not supposed to consider it, but in the back of your mind, you always know somebody may get immediately released to the street. This is not a case where anybody is going to get immediately released to the street. But we ask you to do the right thing, take these issues up and decide them, and to not uphold convictions that are not, no longer valid after Johnson. Thank you. Thank you very much. Mr. Smith, you were appointed by the Court to represent Gerald Smith in this case, and we are very grateful for your assistance. Thank you very much. The case is submitted.
judges: Millett, Pan, Randolph